UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
(SOUTHERN DIVISION)

APR -7 PM 12:58

U.D. OF ALABAMA

| | |
|---|---|
| SEROLOGICALS SPECIALTY BIOLOGICS, INC., A Delaware Corporation, <br><br>Plaintiff, <br><br>v. <br><br>ANITA HYDE, An Alabama Resident, <br><br>Defendant. | Case No. <br><br> CV-04-CO-0710-S |

# COMPLAINT

Plaintiff, Serologicals Specialty Biologics, Inc. ("SSBI"), by counsel, for its Complaint against Defendant Anita Hyde ("Hyde") alleges as follows:

## NATURE OF THE CLAIM

1. This action involves a claim of breach of contract by Defendant.

## PARTIES

2. Plaintiff SSBI is a Delaware corporation with its principal place of business located at 5655 Spalding Drive, Norcross, Georgia.

3. Defendant Anita Hyde is a citizen and resident of the state of Alabama. At all times relevant to this action, Defendant Hyde was a donor of blood plasma to SSBI pursuant to the terms of a contract.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over these claims pursuant to 28 U.S.C. §1332(a) as the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over the Defendant as she resides within the District.

6.      Venue is proper because a substantial part of the events giving rise to the claims stated herein occurred in this District.

## FACTS RELEVANT TO ALL COUNTS

7.      SSBI is in the business of supplying source plasma, specialty and non-specialty antibodies, and specialty biologic components to life science companies who are then able to produce specialized therapeutic and diagnostic products. SSBI's products are vital to the correct laboratory diagnoses and care of patients.

8.      SSBI obtains the majority of its specialty antibodies from individual donors. SSBI relies on donors to provide blood, blood plasma, and/or other blood derivatives. Before an individual becomes a qualified donor, he or she is extensively screened and physically examined. Once an individual is accepted as a donor, an initial donation is taken and quarantined until a second donation can be taken. At that point, both donations are tested. Only after test results are complete and acceptable will an individual become a "qualified donor".

9.      A number of SSBI's donors possess unique blood antibodies. Defendant Hyde's blood plasma is rare.

10.     SSBI has spent a great deal of time and money to identify an immunogen cell donor whose phenotype is compatible with Defendant's red cell phenotype. An immunogen cell donor is necessary because his or her blood is needed to stimulate Defendant's immune system in

2

order to produce the rare antibody. With the exception of the Fyb antigen, the phenotypes of both donors must match exactly for all clinically significant antigen sites to prevent the formation of unintended antibodies. FDA regulations requires companies such as SSBI to test immunogen cell donors for two years before their red blood cells can be injected into another human being. For the foregoing reasons, it is very difficult to match a plasma donor of Defendant's type to an immunogen cell donor and SSBI is one of the very few companies capable of making such a match.

11. When donors who possess rare antibodies are identified, SSBI undertakes to enter into a contractual relationship with them. Defendant Hyde is such a contract donor.

12. Defendant has been a contract donor of SSBI since its formation. On or about March 25, 2003, Defendant Hyde renewed her contract with SSBI. The Donor Contract she executed contains the following provisions:

> 1. During the term of this Contract, Serologicals agrees and promises to make payment (the "Donor Fee") to Donor for the drawing of blood or blood plasma from Donor, according to Schedule A attached and made a part of this Contract.
>
> 2. Donor agrees and promises that during the term of this Contract and for a period of six (6) months thereafter, Donor will provide blood, blood plasma, or other blood derivatives exclusively to Serologicals and will not provide, or promise to provide, blood, blood plasma, or other blood derivatives to any other person or entity.
>
> \* \* \*
>
> 4. This Contract shall have an initial term of three (3) years and shall automatically be extended for successive two (2) year terms unless Serologicals or Donor shall give written notice of the non-renewal to the other party hereto not less than sixty (60) days prior to the end of the effective term.
>
> 5. Donor recognizes that Serologicals requires a dependable and adequate supply of blood, blood plasma and other blood derivatives from screened and monitored donors and that if Donor breaches or threatens to breach this Contract, Serologicals would not be adequately compensated by a remedy of damages. Accordingly, Donor agrees that Serologicals will be, without the necessity of proving damages or posting bond, entitled to obtain an injunction to

prevent Donor from providing blood or blood plasma. . . during the term of this Contract. If any person or entity other than Serologicals seeks to draw blood or blood plasma from Donor during the term of this Contract, Donor agrees to advise such person or entity immediately that Donor is under exclusive Contract with Serologicals and to advise Serologicals immediately of the name of such person or entity and the subject matter of each contact between Donor and such person or entity concerning the provision of blood, blood plasma or other blood derivatives.

* * *

8.   If Serologicals is required to bring any proceeding to enforce the terms of the contract in the event of a breach or threatened breach by Donor, Serologicals shall be entitled to recover all costs thereof, including reasonable attorney's fees and other expenses....

13.   Serologicals Inc. assigned the Hyde Contract to SSBI in January 2004.

14.   On or about May 1, 2003, Joseph Morad and his son David Morad began operating Southern Blood Services, Inc. ("SBS") and opened a donor center in Birmingham, Alabama. Like SSBI, SBS is engaged primarily in the business of collecting, analyzing, processing, and selling human blood plasma and biological products. SBS is a direct competitor of SSBI.

15.   Defendant has been contacted by employees of SBS to make donations to SBS. Upon information and belief, Defendant is making plasma donations at the SBS facility in Birmingham, Alabama, having been induced to breach her contract with SSBI by offers of more money per donation.

16.   On or about December 2, 2003, Defendant Hyde informed Kate Hall, SSBI's National Biodiagnostic Recruiter, of her intent to discontinue donating plasma to SSBI. In response, Ms. Hall asked Defendant to reconsider her position.

17.   Since December 2003, SSBI employees have attempted to contact Defendant to schedule donation appointments per the terms of her contract with SSBI. Defendant Hyde has not responded to any telephone calls or e-mails from SSBI employees. Defendant Hyde has not donated plasma to SSBI since November 2003.

4

18.     Defendant Hyde is a valuable donor to SSBI. Proceeds from the sale of products derived from Defendant's plasma have the potential of grossing over one hundred thousand dollars annually.

19.     If SSBI were to permanently lose Defendant as a donor, entire product lines would have to be discontinued and SSBI will lose significant customers.

## COUNT I
### (Breach of Contract)

20.     SSBI incorporates by reference paragraphs 1-19 above as if fully set forth herein.

21.     Defendant Hyde executed an SSBI donor contract on March 25, 2003.

22.     Among other things, the donor contract prohibits Defendant from donating plasma to any person or entity other than SSBI during the contract term and requires the Defendant to make donations to SSBI for which she is handsomely paid.

23.     In breach of the donor contract, Defendant has made donations at a competitor's facility. Defendant has further breached her contract by refusing to make blood donations to SSBI

24.     Defendant Hyde's actions have caused significant and irreparable harm to SSBI in an amount to be more fully determined at trial, but well in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SSBI prays for judgment on Count I of its Complaint and asks this Court to:

(a)     award SSBI all of its compensatory damages;

(b)     award SSBI its attorneys' fees and costs;

(c)    award interest; and

(d)    such other relief as this Court may deem appropriate, just, and proper.

Respectfully submitted,

*/s/ Audrey Y. Dupont/*

John J. Coleman, III (COL044)
Audrey Y. Dupont (DUP005)
Burr & Forman
420 North 20th Street
South Trust Tower, Suite 3100
Birmingham, AL 35203
205-458-5167 (Phone)
205-244-5623 (Fax)

Christopher ("Kip") Schwartz.
Rebecca A. Hirselj
Buchanan Ingersoll, P.C.
1776 K Street, N.W.
Suite 800
Washington, D.C. 20006-2365
(202) 452-7900

Dated: April 7th, 2004

Counsel for Plaintiff
Serologicals Specialty Biologics, Inc.